FILED
RICHARD W. NAGEL
CLERK OF COURT

1/11/2022

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

330 Bolander Avenue, Dayton, Ohio 45417, including any outbuildings, basements, garages, or sheds located on its curtilage "Location 1"

Case No. 3:22MJ009

## APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the __Southern__ District of __Ohio__, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 841(a)(1) | Possession with intent to distribute a controlled substance |
| 18 USC § 922(g)(1) | Felon in Possession of a Firearm and Ammunition |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO Dustin Phillips, FBI
*Printed name and title*

Sworn to before me and signed in my presence via facetime.

Date: 1/11/22

*Judge's signature*

City and state: Dayton, Ohio

Sharon L. Ovington, U. S. Magistrate Court
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION

I, Dustin J. Phillips, a Task Force Officer ("TFO") for both the Federal Bureau of Investigation ("FBI") and City of Dayton Police Department ("DPD"), hereby duly sworn, declare and state:

## INTRODUCTION

1. I have been employed as a law enforcement officer for the past fourteen (14) years. I currently serve as a detective with the DPD. I am presently a TFO with the FBI Dayton Resident Office's Safe Streets Task Force (SSTF). As such, I have been sworn under the Title 21, United States Code ("U.S.C."), Section 878, to serve as an officer of the United States duly empowered to conduct federal criminal investigations and execute arrests for criminal violations of Titles 18 and 21 of the U.S.C.

2. I am also a TFO with the DPD's Major Case/Drug Enforcement Unit within the Narcotic's Bureau. Since 2013, in my roles with SSTF and DPD, I have almost exclusively concentrated on the investigation of: narcotics, firearms, and gang-related criminal cases. During my law enforcement career, I have been involved in a large number of firearm-related arrests, executions of search warrants resulting in the seizure of large quantities of narcotics and firearms, participated in undercover narcotics purchases, and supervised the activities of police informants who have provided law enforcement authorities valuable and accurate information and assistance that ultimately resulted in undercover narcotics purchases and apprehensions. I have been personally involved in investigations concerning the possession, manufacture, distribution, and importation of controlled substances, as well as methods used to finance drug transactions. Based on my training and experience – including my participation in the investigations referenced above – as well as discussions and interactions with other experienced FBI SA's, Task Force Officers ("TFO"), and narcotics investigators, I am familiar with the manner in which drug traffickers and

their organizations operate within the United States. Based on my aforementioned training and experience, I am familiar with the modus operandi of persons involved in the illicit distribution of controlled substances and as a result, knows the following:

   a. It is common practice for drug traffickers to hide their assets, their addresses, their telephone numbers and beeper/pager services by using other person's names in order to avoid detection by law enforcement officials.

   b. It is common practice for drug traffickers to often maintain residences which are used as "stash houses" or locations for drug storage and distribution, and use "nominees" to obtain telephone service, utility service, and other services to hide the true identity of the owner or person who will use that service.

   c. That drug traffickers often place assets in corporate entities in order to avoid detection of those assets by law enforcement officials.

   d. It is common practice, that even though these assets are in nominee names, drug traffickers will continue to utilize these assets by exercising dominion and control over them.

   e. It is common practice that drug traffickers possess large amounts of U.S. Currency in order to finance their ongoing illicit drug business.

   f. It is common practice that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation and distribution of drugs. Drug traffickers commonly front (provide drugs on consignment) to their clients. The books, records, receipts, notes, ledgers, and other documents are kept where the drug traffickers have ready access to them.

   g. It is common for drug traffickers to provide false information to law enforcement officials regarding their identity and the address of their actual residence.

   h. That persons involved in drug trafficking conceal from law enforcement in their residences, vehicles, and businesses the following items: drugs, large amounts of currency, financial instruments, jewelry, automobile titles, other items of value and/or proceeds of drug transactions, and evidenec of financial transactions relating to the acquisition and concealment of large sums of money resulting from drug trafficking activities.

   i. When drug traffickers amass large proceeds from the sale of drugs, they attempt to hide the true source of these profits, otherwise known as laundering the money. To accomplish this, drug traffickers many times utilize banks and/or financial institutions with their attendant services, including but not limited to, cashier's

checks, money drafts, and letters of credit. Other entities used to launder drug proceeds include real estate firms and purported legitimate business fronts.

j. Drug traffickers commonly travel to facilitate their trafficking activities. After purchasing drugs, traffickers commonly transport, or cause to be transported, drugs to areas in which they will be distributed. Common methods of transportation include, but are not limited to, commercial airlines, and rental/private automobiles.

k. It is common practice that drug traffickers commonly maintain books and similar documents which reflect names, addresses, and/or telephone numbers of their associates in the drug trafficking organization. This information can often be stored in cellular phones in places such as the contacts list.

l. Drug traffickers often take, or cause to be taken, photographs of themselves, their associates, their property and their product, and that the photographs are usually maintained at the residences and/or businesses of drug traffickers. Photographs such as these can commonly be found and stored in cellular phones.

m. Drug traffickers commonly have in their possession, (that is on their person, at their residence, and/or their business) weapons, including firearms of various types. Firearms are used to protect and secure a drug trafficker's property which may include, but is not limited to, narcotics, jewelry, narcotics paraphernalia, books, records, and U.S. Currency.

n. Drug traffickers frequently maintain hidden compartments within their residence and vehicles to hide drug trafficking evidence (money, ledgers, drugs, etc.), bury evidence in containers such as shoe boxes, or hide the evidence in safes.

o. The exact quantities, prices, dates, and methods of delivery of drugs are seldom discussed in detailed terms over the telephone. These details are usually agreed upon during face-to-face transactions. For this reason, most telephone conversations regarding drugs are very brief and often in code, understood by the traffickers and designed to mislead or confuse non-participants of the conversations. Drug traffickers make extensive use of cellular phones and text messaging beepers/pagers to facilitate contacting one another. When calling a beeper or text messaging, traffickers commonly input the number that should be called and sometimes add additional instructions in the form of additional digits. The structure of a drug distribution organization usually consists of sources of supply, wholesale distributors, retail distributors, and the ultimate consumers. The wholesale distributors often have more than one source of supply, and likewise the retail distributors often obtain drugs from more than one wholesale distributor. After receiving a quantity of drugs, the source of supply will often move the drugs to a location other than where he/she sells them to the wholesale distributors. The location of the source of supply's so-called "stash house" is generally a well-guarded secret known only to the source of supply and his closest associates. Most of the drugs, as well as diluting and packaging materials and weighing equipment, are

usually kept at the "stash house." Only those amounts needed for immediate sale are usually kept at the point of sale.

p. Drug traffickers frequently use rental vehicles for everyday travel and will maintain another vehicle, usually at an out of sight location, to facilitate their drug trafficking business.

q. Evidence of past communication between drug traffickers can be found in saved or deleted text messages, call logs, and other forms of electronic communication occurring over, stored in, or accessed by the cellular phone.

r. I have repeatedly encountered a practice wherein drug traffickers distribute a cellular telephone number to their drug customers, often described by traffickers as a "money phone." The money phone is used primarily to communicate with those customers. The customers will subsequently call the trafficker on that cellular telephone number to arrange a purchase of drugs as needed. The trafficker will many times field calls from several customers at once, and then direct all those customers to travel in their car to a designated meeting point. Once all the customers have driven to the designated place, the drug trafficker will appear in his vehicle, quickly conduct hand to hand drug transactions with each customer, and then drive away.

## PURPOSE OF AFFIDAVIT

3. I make this affidavit in support of an application for a search warrant at the following residence – namely:

   a. 330 Bolander Avenue, Dayton, Ohio 45417, including any outbuildings, basements, garages, or sheds located on its curtilage (hereinafter "**Location 1**"). **Location 1** is described more fully in Attachment A, which is incorporated herein by reference;

4. As detailed more fully below, I submit that there is probable cause to believe that evidence of a crime as well as contraband, fruits of a crime or other items illegally possessed in relation to the following offenses exist and can be found inside **Location 1** – namely:

   a. Possession with Intent to Distribute Controlled Substances, in violation of Title 21, United States Code, § 841; and

   b. Being a Felon in Possession of a Firearm and Ammunition, in violation of 18 United States Code § 922.

5. A list of specific items to be seized from the premises described above is attached hereto as Attachment B, and Attachment B is incorporated herein by reference. Based on my training and experience as well as the facts contained in the affidavit, I believe that there is probable cause to believe that the items listed in Attachment B will be found at the premises described above. I have not included every detail of the investigation, but only information necessary to establish probable cause that evidence associated with above-described drug trafficking offenses is located at **Location 1**.

## PROBABLE CAUSE

6. On November 23, 2021, a confidential tip was called into Miami Valley Crime Stoppers which gave information about alleged drug trafficking. The tipster stated Damian Jones has been participating in dog fighting and selling "Fietnall", which I believe to mean fentanyl. The tip indicated that drug activity is occurring at 303 Bolander Avenue. The tip also indicated Jones is associated with a silver Buick LaCrosse but did not give a license plate. I received this tip on December 1, 2021 and drove to check this address. I found that 303 Bolander Avenue does not exist.

7. The tip provided an alias for Jones as "Damian Real Talk". I performed an open source search for "Damian Real Talk" and located a social media account associated with this name. I am familiar with the person depicted on the page as Damian Dawan Jones Jr. from a previous investigation I conducted.

8. On December 6, 2021, I drove to Bolander Avenue and located a silver Buick LaCrosse parked in front of **Location 1**. The Ohio license plate on this car was HLK1038. I ran this license plate through the Ohio Law Enforcement Gateway (OHLEG) and found that the registration expired on May 20, 2021, it belonged to an orange 2011 Chrysler 300, and was

registered to Derica S. Plump. Despite the license plate being expired and belonging to another vehicle, it matched the description of the vehicle listed in the Crime Stoppers tip.

9. On December 7, 2021, I drove past **Location 1**. The Buick LaCrosse was not there and there were no other vehicles parked in front of the house. I drove through the alley behind the house and found that the City of Dayton trash can was out for city removal and was placed in the alley to be picked up. I collected a bag of trash from inside the trash can and examined the contents for any evidence. Inside this bag I located two clear sandwich baggies, each containing a small amount of a crystal-like residue. I utilized a NIK Methamphetamine Reagent System test on the crystal-like residue. This test was positive indicating the presence of methamphetamine. I photographed the positive field test and the two sandwich baggies were tagged into the Dayton Police Department property room as evidence.

10. Over the following several weeks, I did spot checks on **Location 1** several times. On multiple occasions I observed the same silver Buick LaCrosse parked on the street in front of the house.

11. On January 3, 2022, Detectives Lucas Rose, Tyler Orndorff, and I performed a trash pull at 330 Bolander Avenue. We drove through the alley and found that the City of Dayton trash can was out for city removal and was placed in the alley to be picked up. I collected several bags of trash from inside the trash can and examined the contents for any evidence. Inside the bags I located one empty clear sandwich baggie that contained a small amount of marijuana residue. I could see the small amount of residue inside and could clearly smell the odor of fresh marijuana. I also located two empty cardboard ammunition boxes. Both boxes were Barnaul brand, .223 caliber, 20 count boxes. I also located three (3) spent .40 caliber shell casings. Additionally, I located a plastic, empty 50 count tray for ammunition that is commonly inserted into ammunition

boxes. The .40 caliber casings did not fit into the plastic ammunition tray, indicating it was for a third, unknown caliber ammunition. Lastly, I located a piece of a "GoodSense" brand cardboard box which was torn from a 100 count sandwich bags pack. Photographs were taken of all the items recovered and they were all tagged into the Dayton Police Property Room as evidence.

12. From my training and experience, I am aware that sandwich baggies, specifically "GoodSense" brand baggies are commonly used to sell individual amounts of narcotics. I am also aware that it is not uncommon for individuals who are operating a drug trafficking location to possess multiple firearms to protect the house and its contents. The presence of evidence of three different caliber ammunitions indicated the possibility of at least three firearms being present inside the house.

13. On January 4, 2022, I conducted surveillance on **Location 1**. At approximately 0855 hours, I saw Damian Dawan Jones Jr. exit the front door of **Location 1**, get in the silver Buick LaCrosse, which was parked on the street, and leave.

14. Additional investigation into Jones revealed that according to OHLEG, Jones was stopped and cited for speeding while driving a vehicle bearing Ohio license plate HLK1038 on September 16, 2021. This is the same license plate currently affixed to the silver Buick LaCrosse which is commonly parked at **Location 1**.

15. I have also reviewed conviction documents from the Montgomery County, Ohio, Clerk of Courts, indicating that Jones has been previously convicted of the following felony offenses, each of which was punishable by a term of imprisonment exceeding one year, namely:

    a. On or about March 28, 2013, in the Montgomery County, Ohio Court of Common Pleas, case number 2012 CR 03086/2, of "Attempt to Commit Improper Discharge of a Firearm at or into a Habitation";

b. On or about June 19, 2014, in the Montgomery County, Ohio Court of Common Pleas, case number 2013 CR 03328, of "Possession of Heroin (50 unit doses but < 100 unit doses), and Tampering with Evidence (alter/destroy)";

c. On or about June 19, 2014, in the Montgomery County, Ohio Court of Common Pleas, case number 2014 CR 00150, of "Trafficking in Heroin (10 unit doses but < 50 unit doses)"; and

d. On or about June 19, 2014, in the Montgomery County, Ohio Court of Common Pleas, case number 2014 CR 01876, of "Possession of Heroin (1 gram but less than 5 grams)."

## CONCLUSION

16. Based on the facts set forth in the Affidavit, I believe there is probable cause that evidence associated with the above listed drug trafficking offenses are located within the residences and surrounding curtilage of **Location 1**.

Dustin J. Phillips
Task Force Officer
Federal Bureau of Investigation

Sworn and subscribed before me via telephone on this 11th day of January, 2022.

Sharon L. Ovington
United States Magistrate Judge

## Attachment A

**Location 1:** The place to be searched is 330 Bolander Avenue, Dayton, Ohio 45417 and the surrounding curtilage. 330 Bolander Avenue, Dayton, Ohio is a two-story gray, single family home with a white front door and metal security door. 330 Bolander Avenue is located on the south side of Bolander Avenue. 330 Bolander Avenue, Dayton, Ohio 45417 is further depicted in the following photograph.



## ATTACHMENT B

### PROPERTY TO BE SEIZED

The items to be searched for and seized are evidence, contraband, fruits of crime, and other items illegally possessed, as well as property designed for use, intended for use, relating to violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 922(g)(1) including, but not limited to:

A.  Log books, records, payment receipts, notes, and/or customer lists, ledgers, and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances.

B.  Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail and other correspondence.

C.  Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking and money laundering.

D.  Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E.  Electronic equipment such as surveillance video and related equipment, pagers, computers, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios, money counters.

F.  United States currency, precious metals, coins, bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

G.  Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

H.  Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

I.  Illegal drugs, including but not limited to methamphetamine, and other materials, paraphernalia and/or equipment and tools used in the drug trade.

J.  Firearms and ammunition.